T.C. Memo. 2001-53

UNITED STATES TAX COURT

DEBRA SUSAN DICKERSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24540-97.           Filed March 6, 2001.

Debra Susan Dickerson, pro se.

<u>Charles Pillitteri</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1995 in the amount of $5,109.

After concessions by the parties,[1] the issues remaining for decision are as follows:

(1) Whether petitioner may exclude from gross income under section 104(a)(2)[2] proceeds from the settlement of a lawsuit that she received in the year in issue. We hold that she may not.

(2) Whether petitioner is entitled to an earned income credit for Amanda Roland. We hold that she is not.

### FINDINGS OF FACT

Virtually all of the facts have been stipulated, and they are so found. Petitioner resided in Mobile, Alabama, at the time that her petition was filed with the Court.

A. Receipt of Settlement Proceeds From the Lawsuit

Prior to the year in issue, petitioner purchased various insurance policies from Liberty National Life Insurance Co. and Torchmark Corp. (collectively, Liberty Life). Petitioner purchased these policies in order to provide comprehensive health care coverage. The policies included individual medical expense policies, hospital accident policies, hospital confinement and

---

[1] At trial, petitioner conceded that she failed to report (1) wages in the amount of $89 and (2) interest income in the amount of $83, and respondent conceded, inter alia, that petitioner is entitled to a dependency exemption for Amanda Roland. See infra note 3 regarding respondent's additional concession.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1995, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

surgical policies, hospital intensive care policies, and accident policies.

Petitioner ultimately determined that the insurance policies that she had purchased did not provide the coverage that had been represented. Accordingly, petitioner decided to seek legal redress.

In November 1993, petitioner retained the law firm of Olen & McGlothren, P.C. (the Olen law firm) to represent her in prosecuting her claims against Liberty Life. Pursuant to the retainer agreement, petitioner agreed to pay attorney's fees equal to 40 percent of whatever money was eventually recovered, whether by trial or settlement. Petitioner also agreed to pay court costs and related legal expenses from such money.

Thereafter, in 1994, the Olen law firm filed a Complaint on petitioner's behalf in the Circuit Court of Mobile County, Alabama against Liberty Life. Later, in September 1994, an amended complaint was filed.

The amended complaint focused on the various insurance policies that petitioner had purchased from Liberty Life. The amended complaint alleged that these insurance policies contained restrictive payment provisions limiting the amount of petitioner's recovery to benefits available under only one of the policies, such that the other policies were duplicative and worthless.

The amended complaint included 4 causes of action. The first cause of action alleged that the representations made by Liberty Life with respect to the insurance policies were made intentionally, recklessly, or negligently with the intent that petitioner would rely on such representations. The first cause of action also alleged that these representations were part of a pattern and practice encouraged and sanctioned by Liberty Life. Finally, the first cause of action alleged, summarily, that petitioner had suffered "mental anguish".

Under the first cause of action, petitioner sought recovery of an unspecified sum for actual damages, general damages, punitive damages, and such other damages as authorized by Alabama law. Petitioner did not allege how such damages should be allocated among either the types of damages sought or the claims made in the first cause of action.

The second cause of action alleged that Liberty Life wrongfully concealed and suppressed from petitioner the true nature of the insurance policies in that Liberty Life never revealed to petitioner the fact that coverage for payment of benefits was limited to only one policy of insurance. The second cause of action further alleged that Liberty Life wrongfully concealed and suppressed from petitioner the true nature of the pattern and practice in which Liberty Life was engaged.

Under the second cause of action, petitioner sought recovery of an unspecified sum for actual damages, general damages, punitive damages, and such other damages as authorized by Alabama law. Petitioner did not allege how such damages should be allocated among the types of damages sought.

The third cause of action alleged that Liberty Life was guilty of conversion by taking various premium payments that were made by petitioner as a result of the representations or concealment and suppression practiced by Liberty Life. Under this cause of action, petitioner sought recovery of an unspecified sum for actual damages, general damages, punitive damages, and such other damages as authorized by Alabama law. Petitioner did not allege how such damages should be allocated among the types of damages sought.

The fourth cause of action alleged that Liberty Life was guilty of a breach of fiduciary duty to petitioner by virtue of committing the acts described in the amended complaint. Under this cause of action, petitioner sought recovery of an unspecified sum for actual damages, general damages, punitive damages, and such other damages as authorized by Alabama law. Petitioner did not allege how such damages should be allocated among the types of damages sought.

In May 1995, petitioner settled her action against Liberty Life for $40,000. The settlement was memorialized by a release,

which petitioner signed.

The release did not allocate the $40,000 recovery among the four causes of action, nor did it allocate such recovery between compensatory and punitive damages. However, in the release, petitioner acknowledged that the payment represented settlement of her claims for both compensatory and punitive damages. Further, the release indicated that "a primary motivation and consideration" on the part of Liberty Life in agreeing to settle the case was to eliminate the claims made by petitioner for punitive damages.

Pursuant to the terms of the retainer agreement with the Olen law firm, petitioner received $23,550 from the settlement of her lawsuit; i.e., $40,000, less attorney's fees of $16,000 and court costs and related legal expenses of $450.

Petitioner did not include in income on her 1995 income tax return, Form 1040A, any portion of the $40,000 recovery received from Liberty Life, nor did she deduct thereon any portion of the attorney's fees and court costs and related legal expenses that were paid from such recovery.

In the notice of deficiency, respondent determined that petitioner was not entitled to exclude from gross income under section 104(a)(2) any portion of the $40,000 recovery received from Liberty Life. Respondent also determined that petitioner must include the entire recovery in income and then deduct the

portion used to satisfy attorney's fees and court costs and related legal expenses.[3]

B. <u>Earned Income Credit</u>

In 1995, petitioner lived with Jeffery S. Roland (Mr. Roland). Although petitioner and Mr. Roland were not married, they lived together as common-law husband and wife. Mr. Roland's younger sister, Amanda Roland (Amanda), lived with petitioner and Mr. Roland for a portion of the year. At the time, Amanda was 20 years old.

Petitioner filed a joint return for 1995 with Mr. Roland. On that return, petitioner and Mr. Roland claimed both a dependency exemption for, and an earned income credit with respect to, Amanda, who was described as their foster child.

---

[3] At trial, respondent conceded that the portion of the $40,000 recovery that was used to pay attorney's fees and court costs and related legal expenses does not constitute gross income. See <u>Davis v. Commissioner</u>, 210 F.3d 1346 (11th Cir. 2000), affg. per curiam T.C. Memo. 1998-248. In <u>Davis</u>, the Court of Appeals for the Eleventh Circuit followed the Court of Appeals for the Fifth Circuit and held that under Alabama law, amounts paid to an attorney, subject to a contingency fee arrangement, are excludable from gross income. See <u>Cotnam v. Commissioner</u>, 263 F.2d 119 (5th Cir. 1959), affg. in part and revg. in part 28 T.C. 947 (1957). Although we do not share this view, see <u>Kenseth v. Commissioner</u>, 114 T.C. 399 (2000), under the so-called <u>Golsen</u> rule we follow the law of the circuit to which a case is appealable. See <u>Golsen v. Commissioner</u>, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

Consistent with respondent's concession, petitioner is not entitled to deduct the portion of the recovery that was used to pay attorney's fees and court costs and related legal expenses.

OPINION

I. Inclusion v. Exclusion of Petitioner's Settlement Proceeds

Except as otherwise provided, gross income includes income derived from all sources. See sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955). Section 61(a) is to be broadly construed; in contrast, statutory exclusions from income are narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995); United States v. Burke, 504 U.S. 229, 233 (1992); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. per curiam without published opinion 25 F.3d 1048 (6th Cir. 1994).

One statutory exclusion appears in section 104(a)(2). Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".[4] The relevant regulation, sec. 1.104-1(c), Income Tax Regs., provides in pertinent part as follows:

---

[4] The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605(a), 110 Stat. 1755, 1838, amended sec. 104(a)(2) to narrow the exclusion for personal injury damages received pursuant to a judgment or a settlement after Aug. 20, 1996, for taxable years ending after such date. As such, under the amendment, personal injury or sickness must be physical in nature. Moreover, the amendment explicitly excepts punitive damages from the exclusion provided by sec. 104(a)(2). The amendment, however, does not apply to the year before us and, therefore, has no bearing on the instant case.

(c) Damages received on account of personal injuries or sickness.  * * *  The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, damages may be excluded from gross income if a two-prong test is satisfied.  The taxpayer must show: (1) The underlying cause of action giving rise to the recovery is based on tort or tort type rights and (2) damages were received on account of personal injury or sickness.  See Commissioner v. Schleier, supra at 336-337;[5] Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  These two independent requirements must both be satisfied in order for the exclusion under section 104(a)(2) to apply.

Furthermore, the Schleier test has been divided into its disparate elements by some courts.  Thus, the taxpayer must show: (1) There was an underlying claim sounding in tort; (2) the claim

---

[5] In Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995), the Supreme Court distinguished the recovery that a taxpayer receives as a result of an automobile accident from the recovery that a taxpayer receives as a result of age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602.  Whereas both individuals may suffer emotional harm as a result of a defendant's wrongdoing, only the accident victim's recovery can be considered as received "on account of" personal injury because the ADEA does not provide recovery for personal injury.  Therefore, the recovery received by the ADEA claimant is not on account of personal injury.

existed at the time of settlement; (3) the claim encompassed personal injuries; and (4) the agreement was executed in lieu of the prosecution of the tort claim and on account of the personal injury, rendering it a settlement rather than a mere severance agreement. See Greer v. United States, 207 F.3d 322 (6th Cir. 2000).

If a settlement is attributable to claims based on tort or tort type rights as well as other rights, the taxpayer must establish which portion of the settlement is attributable to damages received based on tort or tort type rights. Similarly, if the settlement may be attributable to damages received for personal injuries or sickness as well as other harm, the taxpayer must establish which portion of the settlement is attributable to damages received for personal injuries or sickness. See Whitehead v. Commissioner, T.C. Memo. 1980-508.

When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). See United States v. Burke, supra; Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part on another issue 70 F.3d 34 (5th Cir. 1995). Determination of the nature of the claim is factual. See Bagley v. Commissioner, supra; Stocks v. Commissioner, 98

T.C. 1, 11 (1992).  "[T]he critical question is, in lieu of what was the settlement amount paid."  Bagley v. Commissioner, supra at 406.  If the settlement agreement does not expressly state the purpose for which payment was made, the most important factor is the intent of the payor.  See Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra; Stocks v. Commissioner, supra at 10; Laquaite v. Commissioner, T.C. Memo. 2000-103.

A. The Amended Complaint

The crucial question is whether the net amount; i.e., the $23,550 settlement payment, was received "on account of" personal injury or sickness.  When a payment is received pursuant to a settlement agreement from which we cannot clearly discern why the payment was made, the underlying complaint is normally examined as an indicator of the payor's intent.  See Robinson v. Commissioner, supra.  Logic dictates that defendants will ordinarily determine their liability by taking into account the allegations made in the complaint.  See Threlkeld v. Commissioner, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988); Church v. Commissioner, 80 T.C. 1104 (1983).  Accordingly, the payor's intent may be discerned from the allegations made in the complaint.

Petitioner's settlement agreement with Liberty Life does not state what the $40,000 amount was paid to settle.  As the

settlement agreement does not specifically state why the settlement proceeds were paid, we must look at surrounding facts, including the underlying amended complaint, to decide the intent of Liberty Life in entering into the settlement.

A careful examination of the amended complaint demonstrates that the relief requested was not solely for personal injury or sickness. Thus, the amended complaint included four counts, which asserted claims for detrimental reliance, concealment and suppression, conversion, and beach of fiduciary duty. The damages sought for each cause of action were identical in that petitioner sought recovery of an unspecified sum for actual damages, general damages, punitive damages, and such other damages as authorized by Alabama law.

The amended complaint contained no particularized allegations regarding personal injury or sickness arising from Liberty Life's conduct. In fact, the only allegation of any type of personal injury is found in the first cause of action (regarding detrimental reliance) and that allegation, which is both conclusory and fleeting, reads in its entirety as follows: "Further, the Plaintiff has suffered mental anguish and will so suffer in the future."

We observe at this point that the mere mention of emotional harm in a complaint does not, by itself, serve to exclude the recovery from gross income under section 104(a)(2). Clearly,

such an approach would improperly expand the scope of section 104(a)(2) because language regarding emotional harm could easily be included in every complaint as standard boilerplate. See Kightlinger v. Commissioner, T.C. Memo. 1998-357. What is more, the mere fact that a taxpayer suffers "personal" injury from a defendant's conduct is insufficient to satisfy the "on account of personal injury or sickness" test. Commissioner v. Schleier, supra at 336. Only recovery that is "attributable to" such personal injury is excludable from gross income.

Furthermore, the relief requested by petitioner in the amended complaint included a claim for punitive damages. In the seminal case of O'Gilvie v. United States, 519 U.S. 79 (1996), it was settled that punitive damages generally are not intended to compensate "on account of" personal injury or sickness. Rather, punitive damages are intended solely to levy private fines to punish reprehensible conduct and deter its future occurrence. See O'Gilvie v. United States, supra at 83.

Thus, based on the amended complaint, we cannot find that Liberty Life intended to pay petitioner on account of personal injury to any discernible extent.

B. The Release

Where, as here, the settlement agreement does not expressly state the purpose for which the payment was made, the most important factor is the payor's intent. See Knuckles v.

Commissioner, supra at 613.

The evidence does not demonstrate that Liberty Life specifically intended to compensate petitioner on account of personal injury or sickness.  For instance, the record is silent as to whether the negotiations leading to the settlement agreement involved any discussion regarding personal injuries that petitioner may have suffered.  Indeed, there is nothing in the record to suggest that Liberty Life was aware of any personal injury that petitioner may have suffered.  In this regard, and as previously stated, the amended complaint makes no mention of personal injuries or sickness, other than the tangential reference to "mental anguish" in the first cause of action.

The settlement agreement is embodied in the form of a standardized release, of which "a primary motivation and consideration on the part of [Liberty Life] * * * in payment of the settlement amount is to eliminate the punitive damage claims".  A standardized release may be indicative that the payment was not made "on account of" personal injuries.  See Laquaite v. Commissioner, supra; Gajda v. Commissioner, T.C. Memo. 1997-345, affd. 158 F.3d 802 (5th Cir. 1998).  Moreover, as previously stated, punitive damages ordinarily are not received "on account of" personal injuries or sickness and are therefore includable in gross income.  See O'Gilvie v. Commissioner, supra.

When a settlement resolves a number of claims and does not

allocate proceeds to specific claims and there is no evidence that a specific claim was meant to be singled out, we consider the entire amount taxable.  See Morabito v. Commissioner, T.C. Memo. 1997-315.

In Commissioner v. Schleier, 515 U.S. 323 (1995), the Supreme Court cautioned that there must be a direct link between the personal injury and the recovery of damages for the exclusion in section 104(a)(2) to apply.  In the present case, petitioner has not shown that her claim for mental anguish prompted, to any discernible extent, the settlement proceeds that she received.

In agreeing to settle petitioner's civil action, Liberty Life appears to have been highly motivated by the possibility of an award of punitive damages.  Significantly, the release did not specifically allocate any amount as compensation for personal injury or sickness.  Further, petitioner has not adduced any facts upon which she would rely to prove such an allocation. Under these circumstances, we are unable to find that a specific portion of the settlement was intended to satisfy any potential claim for mental anguish that petitioner might have had.  See, e.g., Ramos v. Davis & Geck, Inc., 224 F.3d 30 (1st Cir. 2000). As a result, the entire payment is presumptively includable in gross income.  See Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994).

In conclusion, petitioner's amended complaint and the

release do not demonstrate that any discernible portion of the settlement proceeds was paid on account of personal injury or sickness. Petitioner has therefore, failed to satisfy the second prong of the Schleier test. As a result, no portion of the settlement proceeds may be excluded from gross income under section 104(a)(2).

Because the record does not show that any discernible portion of petitioner's recovery was attributable to personal injury or sickness, we need not decide whether the underlying civil lawsuit was based on tort or tort type rights.

## II. Earned Income Credit

For the year in issue, petitioner claimed an earned income credit based on Amanda qualifying as a foster child.

Section 32(c)(3) defines a "qualifying child" in terms of a number of tests that must be satisfied. Among these tests is the so-called relationship test. See sec. 32(c)(3)(A)(i), (B). As relevant herein, an individual satisfies the relationship test if he or she is an eligible foster child of the taxpayer. See sec. 32(c)(3)(B)(i)(III). In turn, section 32(c)(3)(B)(iii) defines "eligible foster child" to mean an individual who the taxpayer cares for as the taxpayer's own child and who has the same principal place of abode as the taxpayer for the taxpayer's entire taxable year.

In the present case we need not decide whether petitioner

cared for Amanda as her own child because the record is clear that Amanda did not have the same principal place of abode as petitioner for petitioner's <u>entire</u> taxable year.  Petitioner is therefore not entitled to an earned income credit.  We therefore, hold for respondent on this issue.

<u>Conclusion</u>

In order to give effect to our disposition of the disputed issues, as well as the parties' concessions, see <u>supra</u> notes 1 and 3,

<u>Decision will be entered</u>

<u>under Rule 155</u>.